UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

CHARLESTON WASHINGTON,

              Plaintiff,

v.

UNKNOWN RAMIREZ,

              Defendant.

_____/

Case No. 1:25-cv-130

Honorable Maarten Vermaat

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983.  In a separate order, the Court granted Plaintiff leave to proceed *in forma pauperis*. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States Magistrate Judge. (ECF No. 1, PageID.4.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros.,*

*Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States Magistrate Judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

consent from the defendants[; h]owever, because they had not been served, they were not parties

to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal

law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted,

or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2),

1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see*

*Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they

are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a

claim.

## Discussion

## I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC)

at the Bellamy Creek Correctional Facility (IBC) in Ionia, Ionia County, Michigan. The events

about which he complains occurred at that facility. Plaintiff sues IBC Acting Lieutenant Unknown

Ramirez.

Plaintiff alleges that Defendant Ramirez served as the hearing officer on a Class 2

misconduct complaint issued to Plaintiff. (Compl., ECF No. 1, PageID.3.) During the hearing,

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States Magistrate Judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

Defendant Ramirez told Plaintiff that, because of Plaintiff's STG (security threat group) status, Defendant Ramirez did not like Plaintiff and was not going to reduce Plaintiff's misconduct complaint to a Class 3 misconduct. (*Id.*) "The rest of the guys [Plaintiff] was with" had their misconduct complaints reduced to Class 3 misconducts. (*Id.*)

Plaintiff alleges that Defendant Ramirez "discriminat[ed]" against him. (*Id.*) As a result, Plaintiff seeks monetary relief. (*Id.*, PageID.4.)

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Based upon the foregoing factual allegations, the Court has liberally construed Plaintiff's complaint to include a First Amendment retaliation claim and Fourteenth Amendment equal protection and procedural due process claims.

### A.    First Amendment

Plaintiff alleges that Defendant Ramirez retaliated against Plaintiff due to Plaintiff's STG status. The Court will construe this as a claim for First Amendment retaliation.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

To state a claim for First Amendment retaliation, Plaintiff must first allege facts that would plausibly suggest that Plaintiff was engaged in conduct protected by the First Amendment.

Therefore, to bring a retaliation claim, Plaintiff would need to allege that his STG status is protected by his First Amendment right to freedom of association. He would be mistaken. Plaintiff has no First Amendment right to associate with a security threat group while incarcerated.

Prison inmates do not retain those First Amendment rights that are "inconsistent with [their] status as [prisoners] or with the legitimate penological objectives of the corrections system." *Jones v. N. Carolina Prisoners' Lab. Union, Inc.*, 433 U.S. 119, 129–33 (1977) (*citing Pell v. Procunier*, 417 U.S. 817, 822 (1974)). Prisons obviously differ from free society in that they are populated, involuntarily, by people who have been found to have violated one or more of the criminal laws established by society for its orderly governance. *Id.* The United States Supreme Court has repeatedly recognized the need to place major restrictions on (1) the rights of prisoners to accommodate institutional needs and objectives and (2) provisions of the Constitution that are of general application, including situations in which First Amendment rights are implicated. *Id.* Freedom of association is among the rights least compatible with incarceration. *Overton v. Bazzetta*, 539 U.S. 126, 131 (2003) (*citing Jones,* 433 U.S. at 125–126)).

To determine whether prison regulations are reasonably related to a legitimate penological interest, the Court must assess the restriction by reference to the following factors: (1) whether there exists a valid, rational connection between the prison regulation and the legitimate governmental interest; (2) whether there remain alternative means of exercising the right; (3) the impact that accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and (4) whether there are ready alternatives available that fully accommodate the prisoner's rights at *de minimis* cost to valid penological interests. *Turner v. Safley*, 482 U.S. 78, 89–90 (1987). Applying this standard, the Supreme Court has upheld a variety of limitations on First Amendment protections. *See Shaw v.*

6

*Murphy*, 532 U.S. 223, 229 (2001) (holding that prisoners do not have a First Amendment right to provide legal assistance to other prisoners) (quoting *Pell v. Procunier*, 417 U.S. 817, 822 (1974)) (sustaining proscriptions on media interviews); *Thornburgh v. Abbott*, 490 U.S. 401, 419 (1989) (applying *Turner* standard to a prison ban on certain publications); *Turner*, 482 U.S. at 93 (restricting inmate-to-inmate correspondence); *see also Jones*, 433 U.S. at 133 (upholding prohibition on prisoner labor unions).

The defining characteristic of an STG is that it poses "a threat to staff or other prisoners or to the custody, safety and security of the facility." PD 04.04.113(B). Despite that threat, the MDOC does not forbid membership in an STG, it simply creates restrictions for members—the same sort of restrictions that go with higher security classifications. As the Sixth Circuit Court of Appeals noted in *Ford v. Harvey*, 106 F. App'x 397 (6th Cir. 2004), "Ford's designation as a "Security Threat Group Member" is nothing more than a security classification used by the prison." *Id*. at 399. In *Harbin-Bey v. Rutter*, 420 F.3d 571 (6th Cir. 2005), the Sixth Circuit determined that "[t]he MDOC's policy directive regarding the classification of inmates as STG members is rationally related to the legitimate state interest of maintaining order in the prison." *Id.* at 576. Whatever right to freedom of association that Plaintiff retains as an incarcerated person, he "does not have a constitutional right to be placed in a specific security classification." *Id*.

Therefore, Plaintiff's STG status is not "protected conduct" that might serve as the foundation for a retaliation claim.

### B.    Fourteenth Amendment

#### 1.    Equal Protection

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const., amend. XIV; *City*

*of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). To state an equal protection claim,

Plaintiff must show "intentional and arbitrary discrimination" by the state; that is, he must show

that he "has been intentionally treated differently from others similarly situated and that there is

no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564

(2000).

The threshold element of an equal protection claim is disparate treatment. *Scarbrough v.*

*Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). Further, "'[s]imilarly situated' is a

term of art—a comparator . . . must be similar in 'all relevant respects.'" *Paterek v. Vill. of Armada*,

801 F.3d 630, 650 (6th Cir. 2015) (quoting *United States v. Green*, 654 F.3d 637, 651 (6th Cir.

2011)).

In this case, Plaintiff fails to allege facts showing that "[t]he rest of the guys [Plaintiff] was

with" were similarly situated prisoners in all relevant respects. Instead, Plaintiff's claim rests on

conclusory allegations of discrimination. Conclusory allegations of unconstitutional conduct such

as these without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S.

at 678; *Twombly*, 550 U.S. at 555. Furthermore, even viewing Plaintiff's equal protection claim as

a class-of-one claim, the Court would reach the same conclusion because Plaintiff's equal

protection claims are wholly conclusory, and he has alleged no facts that plausibly show that the

others were similarly situated in all relevant respects.

Accordingly, the Court will dismiss Plaintiff's equal protection claim.

### 2.    Procedural Due Process

Finally, the Court construes Plaintiff's complaint as bringing a Fourteenth Amendment

procedural due process claim related to Plaintiff's Class 2 misconduct conviction. To prevail on a

procedural due process claim, an inmate must first show that he was deprived of "life, liberty, or

property" by government action. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). The Supreme

Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). Prisoners retain a liberty interest with respect to state-imposed prison discipline that "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

A prisoner's ability to challenge a prison misconduct conviction therefore depends on whether the conviction implicated any liberty interest. A prisoner does not have a protected liberty interest in prison disciplinary proceedings unless the sanction "will inevitably affect the duration of his sentence" or the resulting restraint imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See Sandin v. Conner*, 515 U.S. at 484, 487. Under MDOC Policy Directive 03.03.105 ¶ C (eff. Apr. 18, 2022), a class I misconduct is a "major" misconduct and class II and III misconducts are "minor" misconducts. The policy further provides that prisoners are deprived of good time or disciplinary credits only when they are found guilty of a class I misconduct. *Id*. ¶ DDDD.

Here, Plaintiff alleges that he was convicted of a Class 2 misconduct. The Sixth Circuit has routinely held that misconduct convictions such as this that do not result in the loss of good time are not atypical and significant deprivations, and therefore do not implicate due process. *See, e.g.*, *Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004), *overruled on other grounds by Maben v. Thelen*, 887 F.3d 252 (6th Cir. 2018); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003); *Green v. Waldren*, No. 99-1561, 2000 WL 876765, at *2 (6th Cir. June 23, 2000); *Staffney v. Allen*, No. 98-1880, 1999 WL 617967, at *2 (6th Cir. Aug. 12, 1999).

Furthermore, Plaintiff does not allege any facts suggesting that any misconduct conviction resulted in an "atypical and significant hardship." *See Sandin*, 515 U.S. at 487. Plaintiff fails to

9

allege any facts whatsoever regarding what sanctions, if any, he received because of the misconduct conviction. For these reasons, Plaintiff fails to state Fourteenth Amendment procedural due process claim.

**Conclusion**

Having conducted the review required by the PLRA, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore*, 114 F.3d at 611. Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $605.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $605.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.

Dated:    February 28, 2025                    /s/ *Maarten Vermaat*
                                                                Maarten Vermaat
                                                                United States Magistrate Judge

10